# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AHMED GABOURI,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | NO. CV 11-09486 AGR<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Ahmed Gabouri filed this action on November 17, 2011. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on December 7 and 16, 2011. (Dkt. Nos. 8, 10.) On July 26, 2012, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

# I.
# **PROCEDURAL BACKGROUND**

On November 18, 2008, Gabouri filed an application for disability insurance benefits alleging an onset date of March 28, 2008. AR 13. The application was denied. AR 13, 43. Gabouri requested a hearing before an Administrative Law Judge ("ALJ"). AR 48-49. On May 26, 2010, the ALJ conducted a hearing at which Gabouri and a vocational expert ("VE") testified. AR 188-207. On June 15, 2010, the ALJ issued a decision denying benefits. AR 10-19. On August 30, 2011, the Appeals Council denied the request for review. AR 3-5. This action followed.

# II.
# **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (*per curiam*); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

## B. The ALJ's Findings

The ALJ found Gabouri has the severe impairments of degenerative disc disease of the cervical spine and lumbar spine with lumbar disc protrusion. AR 15. His impairments do not meet a listing. *Id.* He has the residual functional capacity ("RFC") to perform medium work, but is precluded from any work involving repetitive bending or stooping. AR 16. He is capable of performing his past relevant work as a travel agency manager. AR 19.

## C. Dr. Siebold's Opinions

Gabouri contends the ALJ did not give specific and legitimate reasons for rejecting the opinions of Dr. Siebold, the Agreed Medical Examiner ("AME") for his workers compensation claim. He argues that the ALJ ignored Dr. Siebold's preclusion of "substantial work" and cervical spine limitations.

Dr. Siebold performed an initial orthopaedic consultation on January 20, 2009. AR 157. Gabouri complained of pain in the cervical spine, left shoulder, lumbar spine, and right lower extremity. AR 158. He stated he can no longer lift more than five pounds or perform prolonged sitting, bending, or prolonged

standing.[1] AR 160. Dr. Siebold reviewed Gabouri's medical records, conducted a physical and neurological examination, and reviewed x-rays of Gabouri's cervical spine, lumbar spine, and pelvis. AR 160-66. He noted that the x-rays of the cervical spine reveal underlying minor degenerative changes at C4-5, C5-6, and C6-7. *Id.* He placed Gabouri in the "no very heavy lifting category at or above shoulder level on the left" and "no very repetitive motion cervical spine."[2] AR 167. He recommended a MRI of the cervical spine. AR 168. Vocational rehabilitation would not be necessary based on the cervical spine and left shoulder complaints. *Id.* With respect to the lumbar spine, Dr. Siebold noted that Gabouri "has a grossly abnormal MRI of the low back." AR 169. He placed Gabouri in "the no substantial work category with no repetitive stooping or bending lumbar spine."[3] *Id.* Vocational rehabilitation was indicated "if [Gabouri's] job cannot be modified to be within the restriction." AR 170. He recommended an EMG/nerve conduction study of the right lower extremity. AR 169.

On March 24, 2009, Dr. Siebold provided a special supplemental AME report regarding the EMG/nerve conduction studies performed in February 2009. AR 153-56. He noted that the EMG of the neck appears normal, and the

---

[1] Gabouri reported to Dr. Siebold that a doctor had previously precluded him from lifting more than 5 pounds, prolonged sitting, prolonged standing and prolonged walking. Gabouri reported that his employer "honored the restrictions." AR 158.

[2] Under the workers' compensation guidelines, a disability precluding "very heavy lifting" contemplates an individual who "has lost approximately 25% of pre-injury capacity for lifting." Schedule for Rating Permanent Disabilities, State of California Department of Industrial Relations, Division of Workers' Compensation, www.dir.ca.gov/DWC/PDR1997.pdf ("Schedule for Rating Permanent Disabilities") at 2-14.
A disability precluding repetitive motions of the neck or back "contemplates the individual has lost approximately 50% of pre-injury capacity for flexing, extending, bending, and rotating neck or back." *Id.*

[3] Under the workers' compensation guidelines, a disability precluding "substantial work" contemplates an individual who "has lost approximately 75% of pre-injury capacity for performing such activities as bending, stooping, lifting, pushing, pulling, and climbing or other activities involving comparable physical effort." Schedule for Rating Permanent Disabilities at 2-15.

EMG/nerve conduction study of the right lower extremity "is abnormal consistent with a right S1 radiculopathy and possible L5 radiculopathy." AR 153-54. He stated that he would provide a supplemental report after the MRI of the cervical spine. AR 155.

On May 29, 2009, Dr. Siebold provided a supplemental AME report regarding the MRI of the cervical spine. AR 138-52. He noted "a positive MRI of the cervical spine with multi-level disc disease and disc desiccation at virtually every level." AR 143. "Work restrictions for the cervical spine would include no repetitive motion cervical spine with no prolonged positioning, cervical spine," and "no very heavy lifting restriction for the left upper extremity, with no heavy lifting at or above shoulder level for the left shoulder and neck."[4] AR 144. Dr. Siebold did not recommend vocational rehabilitation based on the cervical spine and left shoulder region because Gabouri's "job is congenial to this restriction." *Id.* Regarding the lumbar spine, Gabouri's restrictions remained the same as noted in Dr. Siebold's January 2009 report, and "[v]ocational rehabilitation would be indicated if the job cannot be modified to be within the restriction." AR 145-46.

The ALJ noted that, in the January 2009 report, Dr. Siebold restricted Gabouri from very heavy lifting at or above shoulder level on the left, very repetitive motions of the cervical spine, and repetitive stooping or bending. AR 17, 19. At the hearing, the ALJ indicated he was missing the page from Dr. Siebold's May 2009 report that listed Gabouri's work restrictions. AR 203-04. The ALJ therefore asked Gabouri's attorney to read the restrictions from the report for purposes of posing a hypothetical to the VE. *Id.* Gabouri's attorney read: "Work restriction of the cervical spine would include no repetitive motion, cervical spine with no prolonged positioning, cervical spine based on the

---

[4] Under the workers' compensation guidelines, a disability precluding "heavy lifting" contemplates an individual who "has lost approximately 50% of pre-injury capacity for lifting." Schedule for Rating Permanent Disabilities at 2-14.

objective findings in this area. . . . There would be no heavy lifting for the left upper extremity, no heavy lifting at or above shoulder for the left and neck." AR 204-05. The ALJ then asked the VE if, with those restrictions, such an individual could work as a travel agency manager. AR 205. The VE testified that such an individual could perform such work. *Id.*

Gabouri argues that the ALJ ignored the preclusion from substantial work and the cervical spine limitations from the May 2009 report. However, in workers' compensation terminology, Dr. Siebold's opinion regarding "substantial work" meant that Gabouri has lost approximately 75% of his pre-injury capacity for stooping or bending the lumbar spine. AR 169; Schedule for Rating Permanent Disabilities at 2-15. The RFC determination, which precluded Gabouri from repetitive bending or stooping, incorporated a rational interpretation of Dr. Siebold's opinion regarding Gabouri's stooping or bending capabilities.[5] *See Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (In analyzing medical reports using workers' compensation standards, the ALJ "is entitled to draw inferences 'logically flowing from the evidence.'") (citation omitted).

Although the RFC stated in the decision does not expressly include Dr. Siebold's cervical spine limitations, any error was harmless because the ALJ used all of the cervical spine limitations from Dr. Siebold's January and May 2009 reports in a hypothetical question to the VE. AR 203-05. The VE testified that a person with those limitations could work as a travel agency manager. AR 203-05. The ALJ expressly relied on the vocational expert's testimony that "an individual

---

[5] The ALJ expressly acknowledged that the workers' compensation and Social Security programs are two distinct programs. AR 16-17; *see Desrosiers v. Sec. of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (Under California's workers' compensation guidelines, work capacity is not based on strength but on whether a claimant sits, stands or walks most of the day. The categories of work under the Social Security Act "are measured quite differently. They are differentiated primarily in step increases in lifting capacities."); *see also Macri*, 93 F.3d at 544 (Terms of art used in workers' compensation proceedings are not equivalent to Social Security disability terminology.).

of the claimant's vocational profile and residual functional capacity would be capable of returning to this occupation as it is normally performed in the economy" in finding that Gabouri could perform his past relevant work as a travel agency manager. AR 19. As discussed above, Dr. Siebold opined that vocational rehabilitation was not indicated based on the cervical spine limitations because Gabouri's job was "congenial to this restriction." AR 144.

### D. Credibility

Gabouri contends the ALJ failed to articulate legally sufficient reasons for rejecting his symptom testimony.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)). The ALJ found that Gabouri's medically determinable impairments could reasonably be expected to cause his symptoms. AR 18.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.' " *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). "[T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citations and quotation marks omitted). "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." *Id.* (citation and

quotation marks omitted).

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (*e.g.*, movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling 88-13)[6] (quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

As the ALJ noted, Gabouri testified that he has constant back pain, neck pain, leg pain, and shoulder pain. AR 16, 193. He cannot stay at a desk for long because of the pain in his back, legs, neck, and left shoulder. AR 16, 193. He has a short memory and no concentration because of the pain. AR 16, 194. He can sit for about 45 minutes to an hour and stand for 35 to 50 minutes. AR 16, 195. He can lift a gallon of milk but not much more. AR 16, 196. He does not do any household chores because he cannot bend. AR 16, 197. He has not had recommended back surgery. AR 16, 199.

The ALJ found that Gabouri's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC assessment. AR 18. The ALJ relied on

---

[6] "Social Security Rulings do not have the force of law. Nevertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

several reasons: (1) failure to pursue further treatment; (2) opinions of the treating and examining physicians; and (3) conservative treatment. AR 17, 19.

### 1. Failure to Pursue Further Treatment

Failure to seek treatment or failure to follow prescribed treatment may be considered in assessing credibility. *Orn*, 495 F.3d at 638; *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (lack of consistent treatment may be considered in assessing credibility as to severity of pain); *Bunnell*, 947 F.2d at 346 (noncompliance with prescribed course of treatment is a relevant factor in assessing credibility).

The ALJ noted that, in the absence of a surgical solution, Gabouri is not currently receiving medical care, and is not taking any prescribed pain medications. AR 19. Gabouri testified that he is not currently taking medication or seeing a doctor because he does not have insurance. AR 191. Failure to seek medical treatment cannot support an adverse credibility finding when it is due to lack of funds or medical coverage. *Orn*, 495 F.3d at 638.

### 2. Opinions of the Treating and Examining Physicians

Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ may consider in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ's finding is supported by substantial evidence. The ALJ noted that Dr. Abrams and Dr. Siebold (the workers compensation examiners) precluded Gabouri from heavy lifting and repetitive bending or stooping. AR 19, 121, 144, 145, 169. Dr. Lim, the consultative examiner, found that Gabouri could perform medium work under Social Security guidelines. AR 19, 178. The ALJ reviewed Gabouri's medical records, including evidence that Gabouri had no signs of any neurological deficits in the lower extremities, and had mildly decreased range of motion of the back without any signs of radiculopathy. AR 17, 18, 120, 178. Dr.

Siebold rated Gabouri's subjective complaints in regard to the cervical spine as "constant minimal to intermittent slight with minor activities of daily living becoming constant moderate with activities above the functional restriction." AR 17, 167. He rated Gabouri's subjective complaints in regard to the lumbar spine as "constant minimal to constant slight with minor activities of daily living becoming intermittently more than slight but less than moderate with minor activities of daily living becoming constant moderate to severe with activities above the functional restriction." AR 17, 169.[7]

### 3. Conservative Treatment

The ALJ noted that Gabouri received conservative treatment. AR 17. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). The ALJ's finding is supported by substantial evidence. Records from Brentview Medical show three doctor visits (May 24, 2007, January 21, 2008, and March 13, 2008) and physical therapy (May 29, 2007 and May 31, 2007). AR 17, 97, 98, 100, 102, 107, 110. Dr. Abrams treated Gabouri with physical therapy consisting of ultrasound, interferential unit/TENS, light exercise, and epidural injections. AR 119, 125, 127, 130, 134; *see Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (describing physical therapy as conservative treatment). He released Gabouri from active care on December 9, 2008, and found Gabouri could work, avoiding heavy lifting, repetitive bending and stooping. AR 121. Dr. Siebold suggested occasional refills of anti-inflammatories or analgesics and continued home exercise. AR 144; *see Tommasetti*, 533 F.3d at 1040 (describing anti-

---

[7] Gabouri argues that the ALJ erred in relying on Dr. Siebold's report in rejecting Gabouri's subjective testimony because the ALJ failed to consider all of Dr. Siebold's opinions. As discussed above, the ALJ properly considered all of Dr. Siebold's opinions in his hypothetical to the VE. Gabouri also argues that he is entitled to benefits because Dr. Siebold stated that vocational rehabilitation would be indicated if the work restrictions for the low back could not be accommodated. The VE, however, testified that Gabouri could return to his past relevant work as generally performed.

inflammatory medication as conservative treatment). In the Disability Report – Adult, Gabouri stated that he is taking Advil, aspirin, Naproxen, Ranitidine,[8] and Tylenol. AR 81.

Here, remand is not warranted even though the ALJ erroneously relied upon Gabouri's failure to seek further treatment.[9] In *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2007), the Ninth Circuit concluded that two of the ALJ's reasons for making an adverse credibility finding were invalid. When an ALJ provides specific reasons for discounting the claimant's credibility, the question is whether the ALJ's decision remains legally valid, despite such error, based on the ALJ's "remaining reasoning *and* ultimate credibility determination." *Id.* at 1162 (italics in original). In light of the ALJ's valid reasons for discounting Gabouri's credibility, substantial evidence supported the ALJ's credibility finding. *See Bray v. Comm'r. of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (any error was harmless even if record did not support one of four reasons for discounting claimant's testimony). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

---

[8] Ranitidine treats heartburn. www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000094/ (last visited Sept. 5, 2012).

[9] This would be true even assuming epidural injections do not qualify as conservative treatment.

11

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: September 28, 2012

ALICIA G. ROSENBERG
United States Magistrate Judge